**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000575
29-JUL-2022
08:08 AM
Dkt. 160 MO**

NO. CAAP-17-0000575

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

AGNES G. CANNON, Plaintiff-Appellee/Cross-Appellant,
v.
THOMAS R. CANNON, Defendant-Appellant/Cross-Appellee

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(CASE NO. 2DV161000023)

**MEMORANDUM OPINION**
(By: Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant/Cross-Appellee **Thomas** R. Cannon appeals, and Plaintiff-Appellee/Cross-Appellant **Agnes** G. Cannon cross-appeals, from the **Divorce Judgment** entered by the Family Court of the Second Circuit on July 3, 2017.[1] For the reasons explained below, we vacate the Divorce Judgment (including the property division chart) in part and remand for further proceedings.

**BACKGROUND**

Thomas and Agnes were married on March 23, 1984. Agnes filed for divorce on January 19, 2016. They had no minor or dependent children. Neither sought alimony. The Divorce Judgment — which included findings of fact, conclusions of law, a property division order, and a property division chart — was

---

[1] The Honorable Lloyd A. Poelman presided.

entered on July 3, 2017.  Thomas filed a timely notice of appeal.
Agnes filed a timely notice of cross-appeal.  At issue is the
division and distribution of the parties' marital estate.

Thomas's opening brief raises five issues:[2]

> "a.  The trial [sic] Court erred when it gave
> Thomas only a $10,000 deduction — as Category 1
> property — in the Kekaulike property before it
> awarded both parties a 50/50 split (as category 5
> property) of the equity in or the FMV [fair market
> value] of the Kekaulike property."

> "b.  The trial [sic] Court erred when it did
> not rule whether the facts or the circumstances of
> the parties present any VARCs warranting a
> deviation from the partnership model division of
> assets (as set forth in the trial [sic] Court's
> PDC [property division chart]); if said deviation
> were warranted, the Trial Court erred by not
> itemizing those considerations and deciding the
> extent of the said deviation.

> "c.  The trial [sic] Court erred when it
> valued Agnes' [sic] 401k [sic] account at $198,000
> at the time of trial."

> "d.  The trial [sic] Court erred when it
> refused to hear evidence regarding a verbal
> premarital agreement that was made, adhered to
> during the marriage and that was referred to
> during the marriage."

> "e.  The trial [sic] Court erred by not
> giving Thomas enough time to present his case-in-
> chief."

Thomas challenges the family court's finding of fact no. 28.

Agnes's opening brief also raises five issues:[3]

> "1.  The Oluolu Property Was MPP [marital
> partnership property] and Wrongly Characterized
> MSP [marital separate property]";

---

[2]     Thomas's opening brief does not comply with Rule 28(b)(4) of the
Hawaiʻi Rules of Appellate Procedure (**HRAP**).

[3]     Agnes's opening brief does not comply with HRAP Rule 28(b)(4).

"2.  Capital Contributions Not Proven";

"3.  The Family Court Failed to Consider Equitable Deviation";

"4.  Numerous Errors in the FOF [findings of fact]"; and

"5.  [Thomas] not entitled to a 10K MSP for Kekaulike Property[.]"

Agnes challenges the family court's findings of fact nos. 25, 26, 27, 29, 34, and conclusion of law no. 10.

## STANDARDS OF REVIEW

The family court's findings of facts are reviewed under the clearly erroneous standard; conclusions of law are reviewed de novo under the right/wrong standard.  Gordon v. Gordon, 135 Hawaiʻi 340, 348, 350 P.3d 1008, 1016 (2015).

The family court's final division and distribution of the estate of the parties is reviewed for abuse of discretion, applying the factors set forth in Hawaii Revised Statutes (**HRS**) § 580-47 and marital partnership principles.  Gordon, 135 Hawaiʻi at 348, 350 P.3d at 1016.  The family court's determination of whether facts present equitable considerations authorizing a deviation from the marital partnership model division is a question of law reviewed under the right/wrong standard of appellate review.  Id.

## DISCUSSION

### Marital Partnership Principles

Hawaiʻi follows the marital partnership model.  "Under the Marital Partnership Model, marriage is a partnership to which both parties bring their financial resources as well as their individual energies and efforts.  In divorce proceedings regarding division and distribution of the parties' estate, partnership principles guide and limit the range of the family court's choices."  Hamilton v. Hamilton, 138 Hawaiʻi 185, 206,

3

378 P.3d 901, 922 (2016) (cleaned up).  The family court has wide discretion to divide marital partnership property according to what is "just and equitable" based on the facts and circumstances of each case.  Id. at 206, 378 P.3d at 922 (citing HRS § 580-47[4]).

The marital partnership model distinguishes between property that is brought into the marriage, property that is separately acquired by one spouse during the marriage, and all other marital property.  The family court assigns values to marital partnership property using five categories:

> **Category 1** includes the net market value of property ***separately owned by a spouse on the date of marriage***; these values are repaid to the contributing spouse absent equitable considerations justifying a deviation.
>
> **Category 2** includes the increase in the net market value of Category 1 property during the marriage; these values are divided equally absent equitable considerations justifying a variation.
>
> **Category 3** includes the net market value of property ***separately acquired by gift or inheritance during the marriage***; these values are repaid to the contributing spouse absent equitable considerations justifying a deviation.
>
> **Category 4** includes the increase in the net market value of Category 3 property during the marriage; these values are divided equally absent equitable considerations justifying a variation.

---

[4]      HRS § 580-47 (2006 & Supp. 2016) provides, in relevant part:

**Support orders; division of property.** (a) Upon granting a divorce . . . the court may make any further orders as shall appear just and equitable . . . (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate . . . .  In making these further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, the concealment of or failure to disclose income or an asset, or violation of a restraining order issued under section 580-10(a) or (b), if any, by either party, and all other circumstances of the case.

> **Category 5** includes the net market value of the remaining marital estate at the conclusion of the evidentiary part of the trial; these values are to be divided equally absent equitable considerations justifying a deviation.

Gordon, 135 Hawaiʻi at 349-50, 350 P.3d at 1017-18 (emphasis added).  The marital partnership model requires that the family court: **(1)** find the facts necessary for categorization of the properties and assignment of the relevant net market values; **(2)** identify any equitable considerations justifying deviation from an equal distribution; **(3)** decide whether there will be a deviation and, if so; **(4)** decide the extent of any deviation. Id. at 350, 350 P.3d at 1018.

HRS § 580-47(a) requires that the family court focus on the present and the future, not the past; that is, deviation from the marital partnership model should be based primarily on the current and future economic needs of the parties rather than on punishing one party for misconduct.  Gordon, 135 Hawaiʻi at 353, 350 P.3d at 1021; see also Selvage v. Moire, 139 Hawaiʻi 499, 510, 394 P.3d 729, 740 (2017) (noting that "a family court's property division is an abuse of discretion if it considers one spouse's misconduct to be a 'valid and relevant consideration,' instead of considering 'the factors required by HRS § 580-47'") (brackets omitted) (citing Gordon, 135 Hawaiʻi at 347, 350 P.3d at 1015).

### Kekaulike Property

Thomas's point a. and Agnes's point 5. concern real property referred to by both parties as the **"Kekaulike** Property." The family court made the following findings of fact, which neither party contests and are therefore binding on appeal:[5]

> 3.    [Before the marriage, Thomas]'s mother transferred a large property in . . . Kula, Hawaii . . . to

---

[5]    Unchallenged findings of fact are binding on appeal. In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002) (citing Poe v. Haw. Lab. Rels. Bd., 97 Hawaiʻi 528, 536, 40 P.3d 930, 938 (2002)).

her three children.  [Thomas] and his two siblings agreed and contracted to subdivide the property into three lots — with each sibling to receive one property.  [Thomas]'s lot is located at 1383 Kekaulike Avenue . . . (hereinafter "the Kekaulike property").  When the property was subdivided, the three siblings signed legal documents to have the property subdivided and deemed "farm property."  Then, they conveyed each of the three lots to the specific sibling receiving it.  On February 2, 1989 [(after the marriage), Thomas] and his two siblings conveyed the Kekaulike property to [Agnes] and [Thomas].

.  .  .  .

13.   Alan Shishido, who is certified as a real property appraiser and who was qualified by this Court as an expert in real property appraisals, testified on behalf of [Thomas]. . . .

14.   . . .  Paul Lander, also a certified real estate property appraiser and who was also certified by this Court as an expert in real property appraisals, testified on behalf of [Agnes]. . . .

.  .  .  .

22.   Mr. Shishido testified that the current FMV [fair market value] of the Kekaulike property is *$475,000*.  He based said testimony on an appraisal report he compiled and that was admitted into evidence.  His uncontested testimony was that the FMV of the Kekaulike property as of February 2, 1989 (the date [Agnes]'s name was added to the property) was *$140,000*.  This testimony was based on another appraisal report Mr. Shishido prepared and that was admitted into evidence.

23.   Mr. Lander testified that the current FMV of the Kekaulike property is $515,000.  Said testimony is based on an appraisal report Mr. Lander compiled and that was admitted into evidence.  But Mr. Shishido testified that Mr. Lander's appraisal was defective and unreliable.  Mr. Lander's report stated that the Kekaulike property was residential and that there was no agricultural or ranching activities thereon.  The Kekaulike property has always been zoned agricultural, however, and [Thomas] was and is raising goats on that property.  The pictures Mr. Lander included in his report of the Kekaulike property were taken from the MLS listing, not taken by him.  Mr. Lander's appraisal report also said that there are two dwellings on the Kekaulike property.  In reality, there are only two small open-sided goat houses on the property.  [Thomas]'s uncontested testimony was that he himself built and constructed these two goat houses.  The said appraisal report contained a picture of a "street scene" supposedly abutting the Kekaulike property.  But, as Mr. Shishido testified, the street scene was at least a half mile away.  Mr. Shishido postulated that Mr. Lander may have been looking at the wrong property.

24.   *Mr. Shishido's testimony was credible. Mr. Shishido's appraisal report concerning the Kekaulike property* — and that was admitted into evidence — *is credible, more so than Mr. Lander's report.  Mr. Lander's*

6

> ***report has too many unanswered questions***.  Accordingly, the
> current value of the Kekaulike property is ***$475,000***.

(emphasis added).

Thomas's statement of the points of error does not specifically challenge the family court's conclusion of law no. 10:

> 10.   The Kekaulike property is deemed Marital Partnership Property.  The current FMV of the Kekaulike property is $475,000, with an offset to [Thomas] of $10,000. The balance of said amount is Category 5 property. Accordingly, $465,000 from the current FMV of the Kekaulike property is Category 5 property.

Thomas argues, however, that the family court erroneously "credited" him only $10,000 for the Kekaulike Property. Notwithstanding Thomas's failure to comply with HRAP Rule 28(b)(4), we address his argument because Agnes also challenges conclusion of law no. 10; she argues that Thomas should not have received any credit.

The Divorce Judgment (which includes the family court's findings of fact, conclusions of law, and property division chart) attributes $10,000 of the value of the Kekaulike Property as a gift received by Thomas during the marriage.  The finding is clearly erroneous.  The family court's uncontested finding of fact was Thomas and his two siblings jointly owned a large parcel of land (the **Kula Property**) as tenants in common before Thomas and Agnes were married.  Thus, the value of Thomas's undivided interest in the Kula Property on the date he and Agnes were married was a Category 1 value, which was to be repaid to Thomas absent equitable considerations justifying a deviation.  The record does not contain any evidence about the Category 1 value of Thomas's undivided interest in the Kula Property.

After Thomas and Agnes were married, the Cannon siblings subdivided the Kula Property into three lots, with each sibling to receive one lot.  The Cannon siblings transferred title to Thomas's lot (the Kekaulike Property) to Thomas and Agnes during their marriage.  The difference between the value of

7

Thomas's undivided interest in the Kula Property on the date of his and Agnes's marriage and the date the Kula Property was subdivided (and the Kekaulike Property conveyed to Thomas and Agnes) was a Category 2 value; that value should have been divided equally absent equitable considerations justifying a variation.[6]

The family court correctly classified the Kekaulike Property as a Category 5 asset because Thomas and Agnes acquired title as tenants by the entirety during their marriage.  The value of the Category 5 asset when it was acquired by the marital partnership was, according to finding of fact no. 22, $140,000. The value of that asset on the date of divorce was, according to finding of fact no. 24, was $475,000.  The increase in value of $335,000 was the Category 5 value that should have been divided equally absent equitable considerations justifying a variation.

For the foregoing reasons, conclusion of law no. 10 was wrong.  We vacate it, and the related provisions in the Divorce Judgment (including the property division chart), and remand to the family court for further proceedings.

**Equitable Considerations**

Thomas's point b. and Agnes's point 3. both contend that the family court erred by failing to consider equitable deviation.  Thomas requested equitable deviation in his proposed finding of fact no. 29 and alternative property division charts. The family court adopted one of Thomas's proposed property division charts, "with certain modifications."  But nothing in the Divorce Judgment (including the findings of fact and conclusions of law) indicates that the family court engaged in

---

[6]     The $140,000 fair market value of the Kekaulike Property when it was acquired by Thomas and Agnes does not necessarily equate to the Category 1 or Category 2 values of Thomas's undivided interest in the Kula Property. Among other things, the value of Thomas's undivided interest may have changed when the Kula Property was subdivided, or between the time of the subdivision and the conveyance of the Kekaulike Property to Thomas and Agnes (and, presumably, the conveyance of the other two subdivided lots of the Kula Property to Thomas's siblings and their respective spouses).

the process required by <u>Gordon</u>.  135 Hawaiʻi at 350, 350 P.3d at 1018.  We vacate the property division chart and remand to the family court for further proceedings.

### Agnes's 401(k) Account

Thomas's point c. challenges the family court's finding of fact no. 28:

> 28.   [Agnes]'s 401k [sic] account with First Hawaiian Bank is ten years-old and thus is entirely Category 5 property.  In her Asset & Debt Statement, filed herein in January of 2017 [sic], her said 401K [sic] account had $230,000.  In her Asset & Debt Statement, filed herein on March 10, 2017, [Agnes] stated the said 401k [sic] account contained only $198,000.  In her deposition, [Agnes] testified that she withdrew nothing from said account but that it was devalued because of the stock market.

The Divorce Judgment's property division chart values the account at $198,000.

Thomas argues:

> The ambiguity of this FOF speaks for itself.  If the trial [sic] Court thinks that Agnes' [sic] earlier accounting of her 4401k [sic] account's value was more accurate when she first stated it — at a time when trial was not looming — as it appears to indicate, then the trial [sic] Court should have valued it as $230,000.

Finding of fact no. 28 is not ambiguous.  Agnes's asset and debt statement filed on January 19, 2016, listed the value of her 401(k) plan at $230,000.  Her asset and debt statement filed on March 10, 2017, listed the value as $198,000.  She testified that the decrease in value was because the stock market had "gone down since."  She denied withdrawing any money.  Thomas cites no evidence in the record to the contrary.  Finding of fact no. 28 is not clearly erroneous.

### Premarital Agreement

Thomas's point d. contends that the family court "erred when it refused to hear evidence regarding a verbal premarital agreement[.]"  Thomas's statement of the points of error does not identify where in the record the alleged error occurred, as

required by HRAP Rule 28(b)(4).  Thomas filed a trial memorandum arguing that Agnes orally promised, before their marriage, "that she would not claim any of his assets if the marriage did not work-out [sic].  She implied that she would only claim what she herself earned during the marriage."  However, Thomas does not cite where in the trial record he offered evidence of a verbal premarital agreement, or where an objection to the proffer of such evidence was sustained.  We are not obligated to search the record for information that should have been provided by Thomas.  Haw. Ventures, LLC v. Otaka, Inc., 114 Hawaiʻi 438, 480, 164 P.3d 696, 738 (2007) (explaining that an appellate court "is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions") (first quoting Lanai Co. v. Land Use Comm'n, 105 Hawaiʻi 296, 309 n.31, 97 P.3d 372, 385 n.31 (2004); and then citing Miyamoto v. Lum, 104 Hawaiʻi 1, 11 n.14, 84 P.3d 509, 519 n.14 (2004)).  We decline to address this point of error, which was not properly preserved or presented.

### **Trial Management**

Thomas's final point of error contends that the family court "erred by not giving Thomas enough time to present his case-in-chief."  At the beginning of the evidentiary hearing on March 16, 2017, the family court informed the parties: "[W]e have this set for a full day.  Both sides, we have enough time that both sides will have 135 minutes for direct, cross and closing arguments."  At the end of the day the family court gave each side one additional hour and the evidentiary hearing was continued to April 11, 2017.

On April 11, 2017, the family court received additional evidence and continued the evidentiary hearing to April 27, 2017.

On April 27, 2017, the family court received additional evidence, ordered the parties to submit their proposed divorce decree, updated property division charts, and findings of fact

and conclusions of law by May 8, 2017.  The parties were to return on May 17, 2017, for the court's ruling.

The family court issued its oral ruling on May 17, 2017.

Thomas does not cite where in the trial record he moved for additional time to examine witnesses or offer evidence; or moved to continue the evidentiary hearing; or tendered an offer of proof of what evidence he would adduce if given more time; or otherwise preserved his contention that the family court erred by not giving him enough time to present his case.  We are not obligated to search the record for this information.  Otaka, Inc., 114 Hawai'i at 480, 164 P.3d at 738.  We decline to address this point of error, which was not properly preserved or presented.

### 'Olu'olu Property

Agnes's point 1. contends that the family court erred "when it characterized the Oluolu property as marital separate property."  She challenges findings of fact nos. 25 and 26:

> 25.  [Thomas] owned a one-third interest in the property located at 15/25 Oluolu Place, Kula, Hawaii 96790 (the "Oluolu property").  [Thomas]'s Mother had conveyed the Oluolu property to him and his two siblings on December 31, 1984.  In December of 2016, [Thomas] sold his interest in the Oluolu property for $275,000.  He deposited the funds from this said sale into his Territorial Savings Bank account, which had very little funds in it before that time.  Said bank account was solely in [Thomas]'s name.  [Agnes] did not contribute to the maintenance or enhancement of said bank account.
>
> 26.  [Agnes]'s name was never on the Oluolu property or on the Territorial Savings Bank account where [Thomas] deposited his funds from the sale of his interest in the Oluolu property.  [Agnes] had nothing to do with the Oluolu property.  She did not participate in maintaining or in improving the said property.  She expended no funds to maintain or improve the property.  No evidence was presented that any marital (Category 5) funds or efforts were spent on maintaining or improving the Oluolu property.

Agnes asserts that the 'Olu'olu Property should have been categorized as Marital Partnership Property "subject to division in [this] divorce proceeding" because the evidence

establishes that, similar to the wife in Hamilton, she used Marital Separate Property (in the form of a $20,000 gift she claimed to have received from Thomas's mother) to "help[] [Thomas] obtain ownership of the Oluolu property at a one quarter [sic] interest[.]"  Agnes's reliance on Hamilton is misplaced.

In Hamilton, the wife argued that the family court erred by characterizing the funds remaining in the husband's inheritance account as Marital Separate Property.  138 Hawaiʻi at 202, 378 P.3d at 918.  At trial, the wife's forensic accounting expert testified pursuant to his report that a total of $463,455 had been paid for the husband's inheritance taxes.  Id.  The family court included this amount as "***Category 3 assets used for marital purposes*** for which Husband is entitled to be repaid."  Id. (cleaned up) (emphasis added).  Although the husband's inheritance was placed in a "separate" account, the Hamilton court determined that "the inheritance cannot be classified as Marital Separate Property" "if inheritances taxes are paid out of Marital Partnership Property[.]"  Id.  The court noted that in order for the funds remaining in the husband's inheritance account to be Marital Separate Property, the $463,455 paid as inheritance taxes had to be excluded from Category 3 Marital Partnership Property.  Id. at 203, 378 P.3d at 919.

The record in this case shows that the parties presented conflicting evidence at trial pertaining to the characterization of the ʻOluʻolu Property.  On appeal, Agnes relies solely on the testimony of Thomas's sister, Patricia **Mazingo**, to support her contention that the ʻOluʻolu Property should have been characterized as Marital Partnership Property because Agnes used a $20,000 gift from Thomas's mother to "help[] [Thomas] obtain ownership of the Oluolu property at a one quarter [sic] interest[.]".  However, the family court determined that Mazingo "was not credible":

> 27. [Thomas]'s sister – Patty Mazingo – testified twice in [Agnes]'s case-in-chief. ***To the extent that her testimony was relevant and was adverse to [Thomas], Mrs. Mazingo's testimony was not credible***.  When she testified on

> March 16, 2017, she at first denied that she harbored any bad feeling toward [Thomas].  But only moments later, she caught herself mid-sentence as she was blurting-out [sic] that she was having problems with [Thomas].  She admitted that she had a property dispute with [Thomas] concerning an easement on his Kekaulike property.

(emphasis added).  Evaluating the credibility of witnesses and weighing the conflicting evidence lies in the sole province of the trial court.  See Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360 ("It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact.") (citation omitted).  Thus, finding of fact nos. 25 and 26 are not clearly erroneous; each is supported by substantial evidence in the record, and we are not left with a definite or firm conviction that the family court made a mistake.

### Capital Contributions

Agnes's point 2. argues that "capital contributions not proven" under Hamilton.  Despite Agnes's failure to comply with HRAP Rule 28(b)(4)(C), we are able to glean from her opening brief that she challenges findings of fact nos. 7, 9, and 10.  See Dan v. State, 76 Hawaiʻi 423, 428, 879 P.2d 528, 533 (1994); see also Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012) ("[N]oncompliance with [HRPP] Rule 28 does not always result in dismissal of the claims, and this court has consistently adhered to the policy of affording litigants the opportunity to have their cases heard on the merits, where possible.") (cleaned up) (citations omitted).  The family court found:

> 7. [Thomas]'s father died in 1981.  [Thomas]'s father was the CEO and Chairman of the Board of Bank of Hawaii.  He owned many assets, including real properties.  Around the time of the said marriage, [Thomas] received cash, stocks and bonds from his father's estate.  He liquidated the stocks and bonds.  Including said liquidation, [Thomas] received a total of slightly more than $40,000 from his Father's estate.  He deposited this sum in a Bank of Hawaii account in his name that his father had set-up [sic] for him years earlier.  He used much of this money to improve the Haiku property and the Kekaulike property.  These capital

improvements, along with the amount of [Thomas]'s father's inheritance money spent thereon, include the following:

$3,116.25 – building a gate at the Haiku property

$1,033.04 – for fencing the Haiku property

$3,999.43 – building and maintaining a water system for the Haiku property

$4,925.77 – legal expenses to secure and expand the Haiku property

$1,870.11 – building and maintaining a water system for the Kekaulike Property

$366.40 [–] legal expenses to secure and define the Kekaulike property

**$15,311.00 – TOTAL**

$13,074.49 of these said expenditures were invested in improving the Haiku property and $2,236.51 of the said expenditure[s] were invested in the Kekaulike property.  The total funds – as documented here – expended is $15,311.00.  The total amount of funds expended on capital improvements on the subject properties is probably much higher.  [Thomas] paid these expenses from said Bank of Hawaii account to pay for these capital improvements.

. . . .

9.  Once [Thomas] began receiving money from his Mother's estate, he was able to do needed work to improve both the Haiku property and the Kekaulike property.  These capital improvements, along with the expenses therefor, are as follows:

$40,007.38 – for photovoltaic heating system for Haiku property

$20,272.91 – for elaborate fencing of the Haiku property

$13,877.29 – for elaborate fencing of the Kekaulike property

$2,957.72 – for a gate for the Haiku property driveway

$5,461.97 – for materials to improve the Haiku property deck

$6,131.45 – for a wood-burning stove heater on the Haiku property

$3,953.10 – for a storage facility on the Haiku property

$7[,]443.98 – for an improved water system for the Haiku property

$4,919.20 – for legal expenses to secure and define the Kekaulike property

$4,675.00 – for legal expenses to secure and expand
        the Haiku property

$2,157.65 – for an improved water system on the
        Kekaulike property

**$111,857.65 – TOTAL**

$90,903.51 of this said amount was spent on improving the Haiku property and $20,954.14 of this said amount was spent on improving the Kekaulike property.

10.  Upon receiving inheritance from his Mother, [Thomas] was also able to pay-off the principal mortgage on the Haiku property for $195,852.17 and the principal on a home equity loan on the Haiku property for $30,624[.]43, for a total pay-off of $226,476.60.  Said expenditures increased the value of the marital estate.

As Agnes correctly notes, Thomas, as the partner requesting repayment for his contribution to Marital Partnership Property, bears "the burden of proving that he contributed property to the marital partnership and of establishing the property's value at the time of contribution."  Hamilton, 138 Hawaiʻi at 203, 378 P.3d at 919 (citing Mark IV Pictures, Inc. v. Comm'r., 969 F.2d 669, 672 (8th Cir. 1992)).  She maintains that the Quicken ledgers in Thomas's exhibits "EEE" and "FFF" are: (1) improper evidence; and (2) insufficient to prove that Thomas contributed property to the marital partnership and to "establish the value of any property for which he should get credit."  Agnes failed to properly preserve these arguments.

### 1.   Improper Evidence

As to Agnes's argument that Thomas's exhibits "EEE" and "FFF" constitute improper evidence, the record shows that Agnes's counsel objected to the admission of Thomas's exhibits "EEE" and "FFF" into evidence.  Agnes's counsel stated the basis for his objection to exhibit "EEE":

[Thomas's Counsel]: I'd like to introduce [Thomas]'s Exhibit E into evidence.

[Agnes's Counsel]: Objection, **foundation**, what we talked about, your Honor.  This is somebody's personal Quicken books.  Everybody has some.  There's nothing on here.  The last ten minutes was completely irrelevant.

15

> THE COURT: Do you mean Exhibit E -- EEE?
>
> [Thomas's Counsel]: Yes.
>
> [Agnes's Counsel]: It shows different accounts and different ways of entering and it doesn't say one word about inheritance on there.  And that's his own writing, your Honor.

(emphasis added).  Agnes's counsel also explained the basis for his objection to the admission of exhibit "FFF":

> [Thomas's Counsel]: Okay.  Okay, your Honor.  I move, ah, to admit FFF into evidence.
>
> THE COURT: Okay.  Any objection to Court receiving FFF?
>
> [Agnes's Counsel]: Yes, your Honor.  And I  -- I want to make a running objection that all Quicken accounts should not be received into evidence, your Honor.
>
> THE COURT: And is the objection the same as you had on the other Quicken --
>
> [Agnes's Counsel]: It's on *foundation*, your Honor.

(emphasis added).  Both exhibits "EEE" and "FFF" were admitted into evidence over Agnes's objection.

The April 11, 2017 hearing transcript (which is incorrectly dated May 11, 2017) shows, and Agnes confirms in her opening brief, that Agnes's counsel objected generally for "foundation" to both exhibit "EEE" and "FFF[.]"  "[A] 'lack of foundation' objection generally is insufficient to preserve foundational issues for appeal because such an objection does not advise the trial court of the problems with the foundation." State v. Long, 98 Hawaiʻi 348, 353, 48 P.3d 595, 600 (2002). However, "an exception is recognized when the objection is overruled and, based on the context, it is evident what the general objection was meant to convey."  Id.

Although the family court overruled Agnes's "foundation" objections, the exception does not apply here.  It is not evident from the context what these general objections were meant to convey.  Agnes's arguments on appeal further reveal

that her counsel could have been objecting to exhibits "EEE" and "FFF" on multiple bases, including:

> These ledgers are improper and the date in the upper left suggests, such were created for the trial.  Such documentary evidence is improper because it is not corroboration because it was created by a party litigant.  It is also hearsay as an out-of-court statement, and it is cumulative because it echoes what [Thomas] seeks to testify about. . . . Corroboration has its validity in the fact that a none [sic] party has created it or validated it, timely, to reflect payment or status of an account.  Additionally, there is some question as to whether [Thomas] knows how to use Quicken and whether these ledgers were created for this litigation.

Accordingly, we cannot conclude that from the context it was evident what Agnes's general "foundation" objections to exhibits "EEE" and "FFF" were meant to convey.  Agnes failed to preserve the evidentiary argument she is now making on appeal.

### 2.   Sufficiency of Exhibits "EEE" and "FFF"

Thomas testified that exhibit "EEE" was "a printout of, ah, a report made by my Quicken, ah, financial program" and that exhibit "FFF" was "printouts of reports from my Quicken program regarding, ah, monies received from my dad's inheritance." Agnes argues that the "Quicken ledgers . . . do not substantiate valid contribution to, or investment in [Marital Partnership Property.]"  To support this argument, she maintains that Thomas should instead have presented the following evidence to satisfy his burden under Hamilton: "canceled checks, statements showing payment, invoices of charges, or other documents providing corroboration other than his self-created reports."  Agnes, however, failed to cite any authority for the position that an authenticated printout of a report from a financial accounting application is inadmissible, or that only certified financial statements or bank documents are admissible under these

circumstances.  We therefore deem this argument waived.[7]  HRAP
Rule 28(b)(7) (the opening brief must contain "[t]he argument,
containing the contentions of the appellant on the points
presented and the reasons therefor, ***with citations to the
authorities . . . relied on. . . .***  Points not argued may be
deemed waived.") (emphasis added).

### Additional Challenged Findings of Fact

Agnes's point 4. contends that "there [are] a number of
errors in the findings of fact which require them to be vacated."
She challenges findings of fact nos. 27, 29, and 34, which
provide (with the challenged portions of these findings in bold-
italics):

---

[7]     Hamilton establishes that "expenditures made from a Marital
Separate Property account qualify for characterization as Category 3 Marital
Partnership Property only where they are in the nature of a contribution to or
an investment in Marital Partnership Property."  138 Hawaiʻi at 204, 378 P.3d
at 920.  Expenditures that qualify as contribution to or investment in Marital
Partnership Property investment funds or assets include:

> expenditures for down payments, improvements, or toward the
> principal of loans related to Marital Partnership Property
> real estate, expenditures for Marital Partnership Property
> stock or business interests, or other advances or payments
> toward Marital Partnership real or personal property or
> Marital Partnership investments.

Id. at 203, 378 P.3d at 919.  Expenditures that do not qualify, unless they
are in the nature of contribution to or investment in Marital Partnership
Property, include payments for "a spouse's or children's educations, meals,
trips, socializing, entertainment, requirements for daily living, etc."  Id.

Even if this argument is not deemed waived, we would be able to
conclude that findings of fact nos. 7, 9, and 10 are supported by substantial
evidence and not clearly erroneous.  The family court, in this case,
categorized both the Haiku Property and Kekaulike Property as Marital
Partnership Property.  Finding of fact no. 7 concerned funds Thomas inherited
from his Father to pay for "improvements" to both the Haiku Property and the
Kekaulike Property.  Finding of fact no. 9 then pertained to funds Thomas
inherited from his Mother's estate to pay for "improvements" on the Haiku
Property and Kekaulike Property.  Finding of fact no. 10 addressed Thomas's
use of funds obtained from his Mother's estate to pay off the "principal of
loans related to" the Haiku Property and Kekaulike Property.  Hamilton, 138
Hawaiʻi at 203, 378 P.3d at 919.  The expenditures in findings of fact nos. 7,
9, and 10 qualify as contributions to or investment in the Haiku Property and
Kekaulike Property as Marital Partnership Property and are consistent with the
amounts provided in exhibits "EEE" and "FFF"; Thomas is entitled to repayment
for his contribution to Marital Partnership Property.

27. ***[Thomas]'s sister – Patty Mazingo – testified twice in [Agnes]'s case-in-chief.  To the extent that her testimony was relevant and was adverse to [Thomas], Mrs. Mazingo's testimony was not credible.***  When she testified on March 16, 2017, she at first denied that she harbored any bad feeling toward [Thomas].  But only moments later, she caught herself mid-sentence as she was blurting-out [sic] that she was having problems with [Thomas].  She admitted that she had a property dispute with [Thomas] concerning an easement on his Kekaulike property.

. . . .

29. ***[Thomas]'s two cemetery plots are located at a family grave.  Both plots were purchased with money from [Thomas]'s father's inheritance and, as such, are Marital Separate Property.***  [Thomas]'s two Lloyd Sexton paintings and one Peggy Hopper print (inherited by [Thomas]) are Marital Separate Property.  [Agnes] did not expend any work or money to maintain or enhance these assets.

. . . .

34. ***In [Thomas]'s exhibit "kkk," the items marked "Inherited" are Category 3 property, the items marked "pre-owned" are Category 1 property and the items marked "gifted" are Category 3 property and, as such, are [Thomas]'s Marital Separate Property.***  The remainder of the items pictured in [Thomas]'s Exhibit "kkk" (e.g. the items purchased when the parties visited Russia) are Marital Partnership Property – Category 5 and are subject to a "pick-auction" as set forth herein.  These Category 5 items as well as all other personal items possessed by either party – except those disposed of in the Property Division Chart, attached to Exhibit "A" as Attachment "1" [–] will be distributed in an equal manner in a "pick auction" as described herein.  The most equitable manner to distribute these Category 5 personal property items is to have a "pick auction," where the parties have a coin toss.  The winner of the coin toss gets to pick whatever items he or she wants.  The other party gets to pick two items.  After that, the parties alternate, each taking a turn to pick one item until all items have been "picked."  Said "pick[-]auction" shall occur in a neutral location as agreed upon by the parties.

### 1.    Finding of fact no. 27

Agnes first argues, without citing authority, that finding of fact no. 27 is clearly erroneous because there was "no testimony or evidence to substantiate any finding that [Mazingo] was not credible."  This finding of fact, however, was specifically based upon the family court's evaluation of "the credibility of [Mazingo's] testimony" in considering her admission that "she was having problems with [Thomas]" and her admission that "she had a property dispute with [Thomas]

concerning an easement on his Kekaulike property." "[I]t is not the province of the appellate court to reassess the credibility of witnesses[,]" In re Doe, 95 Hawaiʻi 183, 197, 20 P.3d 616, 630 (2001) (citation omitted), such as Mazingo; "this is the province of the family court as the trier of fact[,]" Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360 (citation omitted).

## 2. Finding of fact no. 29

Agnes asserts that "[a] review of the trial testimony does not provide sufficient evidence that [the two cemetery plots were] purchased with inheritance money, and there was no mention throughout the trial." In response, Thomas states that he "testified that he purchased two cemetery plots – one before the marriage and the other . . . either before the marriage or shortly thereafter from his father's inheritance." He cites to the April 11, 2017 transcript (which is incorrectly dated May 11, 2017), which provides:

> Q. Okay. You have two cemetery plots. Where did they come from?
>
> A. I -- I believe I bought one before we were married and I got one afterwards.
>
> Q. You believe. . . . [H]ow sure are you that you purchased it prior to the marriage?
>
> A. Maybe 80 percent sure.
>
> Q. Okay. And, ah, going -- when -- when did you purchase it, if you know?
>
> A. Say again.
>
> Q. When did you purchase that other one, if you know?
>
> A. Ah, soon after we got to Maui, got back to Maui. Ah, around 1985, '86.
>
> Q. Okay. And where did you get the money to buy it?
>
> A. From my dad's, ah, inheritance.

Contrary to Agnes's assertion, Thomas's testimony constitutes substantial evidence to support the challenged portion of finding

of fact no. 29 and the finding is not clearly erroneous.  See
Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360.

### 3.    Finding of fact no. 34

As stated, Agnes contends that the following portion of
finding of fact no. 34 is clearly erroneous:

> 34.  In [Thomas]'s exhibit "kkk," the items marked
> "Inherited" are Category 3 property, the items marked
> "pre-owned" are Category 1 property and the items marked
> "gifted" are Category 3 property and, as such, are
> [Thomas]'s Marital Separate Property.

She asserts that the family court's decision to include the "pre-
owned" and "gifted" items as Marital Separate Property conflicts
with its April 27, 2017 preliminary ruling, which, Agnes
interprets to require "that items [Thomas] claimed to be
inherited would stay [Thomas]'s as category 1 property, and that
***everything else*** was category 5 property to be split at a 'pick'
auction."  She also asserts that the family court's decision to
include the "pre-owned" and "gifted" items as Marital Separate
Property is not supported by substantial evidence.

The issue on appeal is not whether the challenged
portion of finding of fact no. 34 conflicts with the family
court's April 27, 2017 preliminary ruling; as noted in Fisher,
the issue on appeal is whether there is "substantial evidence to
support the finding[.]"  Fisher, 111 Hawaiʻi at 46, 137 P.3d at
360.  Agnes contends that there is no substantial evidence to
support the family court's categorization of the "pre-owned" and
"gifted" items as Marital Separate Property.  Thomas, in
response, argues that exhibit "KKK" supports the family court's
characterization of "pre-owned" and "gifted" items as Marital
Separate Property.  Thomas's exhibit "KKK" does not constitute
substantial evidence to support the family court's
characterization of the "pre-owned" and "gifted" items as Martial
Separate Property.

The record reveals that the family court initially
sustained Agnes's objection to the admission of exhibit "KKK"

into evidence.  However, following Mazingo's testimony regarding the distribution of their mother's personal items, Thomas's counsel renewed his request to admit exhibit "KKK" into evidence:

> [Thomas's Counsel]:     Your Honor, one further thing. I -- would the Court be inclined to accept, ah, Exhibit KKK into evidence, given [Mazingo's] testimony.
>
> [Agnes's Counsel]: Your Honor, I didn't offer it.
>
> THE COURT: No, he is offering it now.  Any objection to the Court receiving KKK into evidence?
>
> [Agnes's Counsel]: Yes, your Honor.  I mean it depends on what -- what's the purpose.  When you receive something into evidence, there's a -- there's a reason for it.
>
> Is he -- is he offering it that to -- to show that his client is not entitled to anything in the inheritance?  Then I'll accept it as, you know, it'll be -- I -- I would have no objection to it being received into evidence.
>
> [Thomas's Counsel]: Well, your Honor, ah, the Court will decide whether it was, um -- whether it was a 50/50 between Agnes and Thomas or whether it was just given to Thomas.
>
> THE COURT: So this is for the items that are marked as inherited?
>
> [Thomas's Counsel]: Yes.
>
> THE COURT: And as far as those purchased with inheritance money, not?
>
> [Thomas's Counsel]: I guess not.
>
> THE COURT: Okay.  ***So over objection the Court will receive KKK for the purpose only of those items marked as inherited and what the Court does with that is to be seen.***

(emphasis added).  The transcript confirms that the family court admitted exhibit "KKK" into evidence "only [for] those items marked as inherited[.]"  Contrary to Thomas's argument, the family court did not admit exhibit "KKK" for the items marked "pre-owned" or "gifted[.]"  There was no substantial evidence to support the portion of finding of fact no. 34 in which the family court found "the items marked 'pre-owned' are Category 1 property and the items marked 'gifted' are Category 3 property and, as such, are [Thomas]'s Marital Separate Property."  This portion of finding of fact no. 34 is clearly erroneous because there is no

substantial evidence upon which the family court based this determination.

In addition, the family court's conclusions of law are "freely reviewable for their correctness."  Hamilton, 138 Hawaiʻi at 197, 378 P.3d at 913 (citation omitted).  We vacate the portions of conclusion of law no. 12 and paragraph 8 of the property division order which state:

> In [Thomas]'s exhibit "kkk" (that was admitted into evidence) the items marked "Inherited" are Category 3 property, the items marked "pre-owned" are Category 1 property and the items marked "gifted" are Category 3 property and, as such, are [Thomas]'s Marital Separate Property.

This portion of the conclusion and property division order are not supported by the family court's findings and do not reflect an application of the correct rule of law.  We therefore vacate in part finding of fact no. 34, conclusion of law no. 12, and paragraph 8 of the property division order; and remand to the family court for further proceedings.

## CONCLUSION

For the foregoing reasons, we vacate the Divorce Judgment (including the property division chart) in part and remand to the family court for further proceedings not inconsistent with this memorandum opinion.

DATED:  Honolulu, Hawaiʻi, July 29, 2022.

On the briefs:

Kyle B. Coffman,
for Defendant-Appellant/
Cross-Appellee.

Matthew S. Kohm,
for Plaintiff-Appellee/
Cross-Appellant.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge